# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01362-COA

JEREMY MANESS APPELLANT

v.

HOLLIS BLACKWELL APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/19/2024 |
| TRIAL JUDGE: | HON. MATTHEW GORDON SULLIVAN |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KIM T. CHAZE |
| ATTORNEYS FOR APPELLEE: | THOMAS LEWIS TULLOS II |
| | THOMAS L. TULLOS |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 06/30/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND WEDDLE, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. Jeremy Maness was let go from his employment with Mississippi State University Extension Service following allegations that he fueled a personal vehicle from a Smith County fueling station and that on another occasion he charged tires for the vehicle to the county—protocols only permissible for county employees using work vehicles. Subsequently, Maness filed an action against Hollis Blackwell, alleging that Blackwell slandered Maness by stating that Hollis had "used his position for private gain by stealing tires and gas from the Solid Waste fueling station." After two years of discovery, including the deposition of a county fuel-station employee and a former member of the county board of supervisors, the

circuit court granted Blackwell's motion for summary judgment, agreeing that Maness had failed to demonstrate sufficiently specific evidence to support the claim. On appeal, we affirm the judgment of the circuit court.

**FACTS**

¶2.    Until his termination, Maness was employed for twenty-one years with the Mississippi State University Extension Service as the extension service agent for Smith County. Maness and Blackwell ran in overlapping professional circles and were both involved in leadership positions in various livestock organizations, including the Magnolia Junior Swine Association, the Livestock Association, and the Smith County Cattlemen's Association.

¶3.    In May 2021, an attorney for the Smith County Board of Supervisors sent the following letter to the assistant director of the Mississippi State Extension Service:

> I am sending this letter on behalf of the Smith County Board of Supervisors. I regret to inform you that we have discovered that one of your employees has been guilty of inappropriate conduct on two occasions.
>
> First, it was discovered on April 15, 2021, that County Agent Jeremy Maness pulled his or his mother's personal truck up to diesel tanks which are owned by Smith County and filled his personal vehicle with diesel. This is on video.
>
> Secondly, on March 9, 2021, Mr. Maness went to Taylorsville Tire in Taylorsville, Mississippi and purchased a tire for this same vehicle and charged it to Smith County. This was discovered on April 19, 2021.
>
> To give you some background, the pickup used was previously owned by Smith County. In December of 2019, the vehicle was declared surplus property by the Board of Supervisors and sold after taking bids. Mr. Maness' mother, Cynthia Westbrook Kirksey, was the high bidder and the vehicle was sold to her.

2

We recently learned that the vehicle still has a county tag on the vehicle, though it has not been county property since December of 2019. Also, Mr. Maness did not have authority from the county or anyone else to get the diesel or charge the tire to Smith County.

To our knowledge, Mr. Maness does not know that the Board is aware of these two incidents.

We wanted to advice [sic] you of this matter and also seek your guidance [on] how to proceed from here.

. . . .

Maness was fired on June 1, 2021.

¶4.     Maness filed a civil complaint against Hollis Blackwell in February 2022. The complaint alleged in part:

The Plaintiff has been slandered in that on or about May 4, 2021, the Plaintiff learned that the Defendant has sponsored, uttered, and/or ratified slanderous and defamatory words to third parties by stating that the Plaintiff has used his position for private gain by stealing tires and gas from the Solid Waste fueling station.

The complaint further asserted that "the foregoing slanderous statements were and are untrue. All of these statements were known to be untrue or should have been known to be untrue." In addition to defamation, the complaint alleged intentional infliction of emotional distress and, in the alternative, negligence. An additional affidavit filed by Maness asserted that Blackwell's motivation for the slander related to a disagreement between the two over whether youths who were not Smith County residents should participate in Smith County Livestock shows. Further, Maness asserted that after his employment was terminated, the son of a member of the Smith County Board of Supervisors was hired for the open position.

3

¶5.     Discovery materials included the depositions of Tony Hancock, a Smith County employee; Dwight Norris, a former board supervisor for Smith County; and Defendant Hollis Blackwell. Tony Hancock had worked at the county fueling station for seventeen years. In his deposition, he stated that Maness was low on fuel and asked if he could put enough diesel in his truck to get to the nearest gas station in Raleigh. Hancock said yes, and Maness fueled his truck.

¶6.     Norris stated that the allegations related to Maness misappropriating gas and tires came before the board of supervisors at a regular meeting. When asked if it was fair to say that Blackwell "made certain statements," he responded, "I don't know. I really don't know. I don't know, really, anything about it. It was brought to the board . . . ." Norris stated that supervisor Jerry Fields brought the accusations to the board's attention. Maness had been a former student of Norris's when Norris taught in the school system. Norris acknowledged that after the board meeting, he called Maness and then briefly met with him in person. Maness denied any wrongdoing. Norris did not recollect whether he asked Maness who Hollis Blackwell was. When asked if "at that time, did you tell Mr. Maness that Hollis Blackwell was making accusations of theft?" Norris replied, "I don't remember that . . . . I remember talking to him, asking him what happened, and I told him go and see what he could do to get everything straightened out."

¶7.     Blackwell was an administrator for vocational education in the Smith County School District. He knew Maness from Maness's involvement in the same livestock organizations

4

and general community. Blackwell stated that he heard about the diesel incident from Jerry Fields, who had viewed the video from the fueling station. Blackwell heard about the tire incident from county supervisor Howard Hammons. Blackwell represented that he never met or spoke with the board of supervisors as a whole about Maness.

¶8.	Throughout the course of the litigation, both parties filed numerous motions to compel discovery responses. In April 2023, after the three depositions and fourteen months after the complaint was filed, Blackwell again moved to compel Maness to "fully and completely" respond to discovery requests, including propounded interrogatories. Referencing the claims of slander and intentional infliction of emotional distress, Interrogatories 5 and 6 stated:

> Please state all facts supporting your allegations in . . . the complaint. Explain with specificity the factual basis for the allegations and identify every witness and/or document upon which you may rely for proof of said allegations.

Maness's response noted the depositions of Blackwell, Hancock, and Norris. Maness further asserted:

> Also, please recall that the Defendant himself has stated he has interacted with numerous persons regarding what he either perceived, argued, or ratified that Plaintiff had acted inappropriately and, in effect, had stolen or misappropriated property as expressed in the Complaint filed herein.

Maness also noted in his response that Blackwell, when asked to "admit that you told others that Plaintiff has either stolen property or used words the effect he has stolen or misappropriated property that did not belong to him[,]" Blackwell responded, "The Defendant does not recall ever doing so; therefore, Defendant denies this admission." Because Blackwell stated that he did not recall, as opposed to outright denying having made

5

the statements, Maness argued that a jury could infer he did make the statements.

¶9.     When Maness unilaterally noticed additional depositions prior to resolution of the various motions to compel, the trial court granted Blackwell's motion to quash the depositions. Then, after twenty-two months of discovery, Blackwell moved for summary judgment, arguing in part:

> Plaintiff has failed to set forth the statements, paraphrased or verbatim, that constituted slander, and without setting forth any information in the complaint regarding the statements, to whom the statements were made, where the statements were made, when the statements were made, and how the statements were slanderous. The allegations that the Defendant made "slanderous statements" constitutes a bare legal conclusion with no support in the complaint.

Maness opposed the motion, arguing that the discovery conducted to date established an issue for trial and that further discovery was warranted. The trial court granted summary judgment in favor of Blackwell and denied Maness's motion for reconsideration.[1]

## STANDARD OF REVIEW

¶10.     Our review of a trial court's grant or denial of summary judgment is de novo. *Williamson v. Keith*, 786 So. 2d 390, 393 (¶10) (Miss. 2001). "When considering a motion for summary judgment, the trial court must view all the evidence (admissions and pleadings, depositions, affidavits, answers to interrogatories, etc.) in the light most favorable to the

---

[1] Maness attached a new deposition to his motion for reconsideration. The deposition was of former Smith County Sheriff Charlie Crumpton and had been taken in a separate legal action Maness brought against the county. In the deposition, Crumpton represented that Blackwell had called him multiple times to identify Maness as a suspect in the nighttime disappearance of a skid steer from county property.

non-moving party; and, upon this consideration, if the moving party is entitled to judgment as a matter of law, the motion should be granted; otherwise, it should be denied." *Franklin v. Thompson*, 722 So. 2d 688, 691 (¶10) (Miss. 1998). Where disputed facts exist or where different interpretations or inferences may be drawn from undisputed facts, summary judgment is inappropriate. *Eckman v. Cooper Tire & Rubber Co.*, 893 So. 2d 1049, 1052 (¶8) (Miss. 2005). "If our review uncovers any genuine issue of material fact, the decision of the lower court must be reversed." *Smith v. Magnolia Lady Inc.*, 925 So. 2d 898, 901 (¶7) (Miss. Ct. App. 2006).

## DISCUSSION

¶11.    Maness argues that the trial court erred in determining that no genuine issue of material fact existed for trial. Under Mississippi Rule of Civil Procedure 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

"Summary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 210 (¶18) (Miss. 2023) (internal quotation marks omitted).

¶12.    Slander is the spoken form of the tort of defamation. "What is needed in Mississippi to prove the tort are the following":

(a) a false statement that has the capacity to injure the plaintiff's reputation;

(b) an unprivileged publication, i.e., communication to a third party;

(c) negligence or greater fault on part of [the] publisher; and

(d) "either actionability of statement irrespective of special harm or existence of special harm caused by publication."

*Speed v. Scott*, 787 So. 2d 626, 631 (¶21) (Miss. 2001) (quoting *Franklin*, 722 So. 2d at 692 (¶12)). "Mississippi law is well established in holding that in order to bring a claim for defamation, '[t]he words used must have been clearly directed at the plaintiff[,] [and] the defamation must be clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture.'" *Chalk v. Bertholf*, 980 So. 2d 290, 296 (¶12) (Miss. Ct. App. 2007) (quoting *Chatham v. Gulf Pub. Co.*, 502 So. 2d 647, 650 (Miss. 1987)).

¶13.    Summary judgment "tests the notion of well-pled facts and requires a party to present probative evidence demonstrating triable issues of fact." *Id.* at 293 (¶4) (quoting *Children's Med. Grp. P.A. v. Phillips*, 940 So. 2d 931, 934 (¶7) (Miss. 2006)). In *Chalk*, which was decided on the pleadings, this Court found a complaint to be insufficient that "failed to set forth the statements, paraphrased or verbatim, that constituted slander." *Chalk*, 980 So. 2d at 298 (¶18). "Without setting forth any information in the complaint regarding the statements, to whom the statements were directed, by whom the statements were made, and how the statements were slanderous, the allegation that appellees made 'slanderous statements' constitutes a bare legal conclusion with no support in the complaint." *Id.*

¶14.    Here, considering not only the pleadings but also two years of discovery materials,

8

including depositions, affidavits, and multiple rounds of interrogatories, the trial court determined that Maness failed to "set forth specific facts showing that there is a genuine issue for trial" as required by Rule 56(e). *See also* M.R.C.P. 56(c). We agree. "Under Mississippi law, bare assertions are simply not enough to avoid summary judgment." *Travis v. Stewart*, 680 So. 2d 214, 218 (Miss. 1996). Maness has failed to produce triable evidence that Blackwell made statements, what the statements were, to whom they were made, where they were made, et cetera. He did not produce a witness who would testify at trial that Blackwell made the allegedly slanderous statements against him.[2]

¶15.    Maness argues that the truth of the alleged statements is disputed. He asserts that he was granted permission by the station employee to take the diesel, and therefore it was not theft from the county. He also denies that he did not pay for the tires. "The issue of whether the offending words are defamatory may be decided by the trial court without submission to the jury." *Armistead v. Minor*, 815 So. 2d 1189, 1194 (¶10) (Miss. 2002) (citing *Lawrence v. Evans*, 573 So. 2d 695, 697 (Miss. 1990)). "The threshold question in a defamation suit is whether the published statements are false." *Id.* (quoting *Franklin*, 722 So. 2d at 692 (¶13)). Blackwell's answer to Maness's complaint included the affirmative defense of truth. However, Blackwell's motion for summary judgment relies on the lack of sufficiently specific facts to support the elements of the claim and, in particular, the existence of any statement made by Blackwell regarding Maness. In the absence of sufficiently specific

---

[2] Maness's additional claims similarly fail for lack of specificity.

9

evidence to support that the statements were made, what the statements were, by whom they were made, where they were made, when they were made, et cetera, we do not find it necessary to analyze whether the nature of the alleged statements was defamatory.

¶16.    Maness also argues that the trial court improperly limited discovery. "Trial courts have considerable discretion in discovery matters and decisions will not be overturned unless there is an abuse of discretion." *Robert v. Colson*, 729 So. 2d 1243, 1245 (¶11) (Miss. 1999). Discovery in this case actively spanned almost two years. The record indicates multiple hearings, numerous reciprocal motions to compel, multiple rounds of interrogatories, and several depositions. The trial court was within its discretion to quash Maness's additional deposition notices in light of the standing orders compelling Maness's responses to interrogatories. This issue is without merit.

### CONCLUSION

¶17.    We agree with the trial court's determination that Maness did not present sufficiently specific evidence of his slander claim to survive summary judgment. Additionally, the trial court did not abuse its discretion in its discovery rulings.

¶18.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**